## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **FRED LEE BRYANT,** | ) |
| **AIS #00226616,** | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )  **CIVIL ACTION NO. 18-00363-TFM-N** |
| | ) |
| **DEBORAH TONEY,** *Warden,* | ) |
| *Limestone Correctional Facility,* | ) |
| *et al.* | ) |
| **Respondents.** | ) |

## <u>REPORT AND RECOMMENDATIONS</u>

Petitioner Fred Lee Bryant, an Alabama prisoner proceeding with counsel, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 5, PageID.3–17).[1] The District Judge presiding over this case referred Bryant's petition to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2254 Cases in the United States District Courts. *See* S.D. Ala. GenLR 72(b); (11/30/2018 electronic referral).

---

[1] In Bryant's petition filed on the Court's form (Doc. 5, PageID.3–17), he notes that his claims are explained in detail in an accompanying memorandum (Doc. 5, PageID.18–46). Upon transfer from the Northern District of Alabama to the Southern District of Alabama, Bryant filed an amended memorandum in support of the petition (Doc. 7) as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B), which the undersigned treats as the operative filing setting out Bryant's claims.

The Respondent, through the Office of the Attorney General of the State of Alabama, timely filed an Answer (Doc. 12) to the petition, to which Bryant filed a reply (Doc. 13). Bryant's § 2254 petition is now under submission and is ripe for disposition. Following a thorough review of the petition and record, the undersigned finds that an evidentiary hearing is not warranted.[2] Upon consideration, the undersigned **RECOMMENDS** that Bryant's habeas petition (Doc. 5, PageID.3–17) be **DISMISSED with prejudice**. The undersigned also **RECOMMENDS** that Bryant should be **DENIED** a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal.

## I. Background

After a jury trial in Mobile County Circuit Court, Bryant was found guilty of murder in violation of Ala. Code § 13A-6-2. (Doc. 12-1, PageID.184). On February 5, 2015, the trial court sentenced Bryant to life imprisonment. (Doc. 12-1, PageID.182). Through counsel, Bryant appealed the conviction and sentence to the Alabama Court of Criminal Appeals, arguing that there was insufficient evidence to support the jury's verdict. (Doc. 12-4, PageID.1267). The Alabama Court of Criminal Appeals affirmed the guilty verdict in an unpublished memorandum opinion, finding that the State

---

[2] This case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because Bryant filed his federal habeas petition after April 24, 1996. "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1337 (11th Cir. 2004). Bryant failed to establish that an evidentiary hearing is warranted in this case. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner . . . to establish the need for an evidentiary hearing.").

presented sufficient legal evidence from which a rational finder of fact could have, by fair inference, found Bryant guilty beyond a reasonable doubt. (Doc. 12-6, PageID.746). The Alabama Court of Criminal Appeals denied Bryant's subsequent request for a rehearing. (Doc. 12-8). On January 29, 2016, the Supreme Court of Alabama declined Bryant's petition for a writ of certiorari. (Doc. 12-10).

Bryant then filed a *pro se* petition for relief from conviction or sentence under Alabama Rule of Criminal Procedure 32 on April 1, 2016. In his Rule 32 petition, Bryant raised the following claims: (1) the State did not present sufficient evidence to sustain his conviction; (2) the trial court erred by allowing two witnesses to invoke the Fifth Amendment in the presence of the jury; (3) his trial counsel was ineffective for failing to seek a curative instruction regarding the witnesses invoking the Fifth Amendment; (4) the trial court improperly admitted DNA evidence; (5) his trial counsel was ineffective for failing to object to the two witnesses invoking the Fifth Amendment in the jury's presence; (6) his trial counsel was ineffective for failing to object to the DNA evidence admitted against him; (7) his trial counsel was ineffective for failing to hire an outside forensic expert; (8) his trial counsel was ineffective for allowing the State's assistants to enter the jury deliberation room; and (9) his trial counsel was ineffective for failing to seek a mistrial after the State questioned a witness about being threatened by Bryant. (Doc. 12-13, PageID.820–91). On March 22, 2017, the Mobile County Circuit Court denied Bryant's petition without an evidentiary hearing, finding that Bryant's claims were either procedurally barred or

meritless. (Doc. 12-13, PageID.903–11). Bryant filed a motion for reconsideration, which the trial court denied. (Doc. 12-13, PageID.920).

Bryant, with the assistance of counsel, then appealed to the Alabama Court of Criminal Appeals (Doc. 12-14) raising only the following claims: (1) the trial court erred by allowing two witnesses to invoke the Fifth Amendment in the presence of the jury; (2) his trial counsel was ineffective for failing to seek a curative instruction regarding the witnesses invoking the Fifth Amendment; and (3) his trial counsel was ineffective for failing to hire an outside forensic expert. On September 1, 2017, the Court of Criminal Appeals affirmed the trial court's decision in a memorandum opinion, reasoning that Bryant's claims were either procedurally defaulted or meritless. (Doc. 12-17). The Court of Criminal Appeals also noted that the claims Bryant raised in his initial Rule 32 petition but omitted from his brief on appeal "are deemed abandoned and will not be considered." (Doc. 12-17, PageID.988). On September 29, 2017, the Court of Criminal Appeals denied Bryant's subsequent motion for a rehearing. (Doc. 12-19). Bryant then filed a petition for a writ of certiorari in the Supreme Court of Alabama (Doc. 12-20) which was denied on November 9, 2017. (Doc. 12-21). On June 29, 2018, Bryant filed the subject 28 U.S.C. § 2254 petition with the assistance of counsel. (Doc. 5, PageID.1).

## II. Legal Standards

This Court's review of Bryant's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, "the role of the federal court .

. . is strictly limited." *Jones v. Walker*, 496 F.3d 1216, 1226 (11th Cir. 2007).

## A. Merits Review

AEDPA significantly limits the scope of federal review where the state court adjudicated a claim on the merits. Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

According to subsection (1), "[a] federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Indeed, "a state court need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* (internal quotation marks omitted).

The "clearly established Federal law" contemplated by subsection (1) "refers to the holdings, as opposed to the dicta, of [U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal quotation marks omitted); *accord Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Moreover, review under Section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Importantly, "[f]or purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted) (emphasis in original). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks omitted). That is, "an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (noting that a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law *erroneously* or *incorrectly*"—the "application must also be *unreasonable*"). "To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended

6

in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted). And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted). However, "even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). The petitioner bears the burden of showing that the state court's ruling was contrary to, or involved an unreasonable application of, controlling Supreme Court precedent. *Harrington*, 562 U.S. at 98; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Likewise, with respect to §2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12 (2013) (internal quotation marks omitted). In other words, "if some fair-minded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied . . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011); *see also Greene v. Fisher*, 565 U.S. 34 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice system, and not as a means of error correction") (citations and internal quotation marks omitted); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt") (citations and internal quotation marks omitted); *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (noting that "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied") (citation omitted).

Accordingly, in evaluating a § 2254 petition, the Court takes great care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." *Hill v. Humphrey*, 662 F.3d 1335, 1355 (11th Cir. 2011); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide *de novo* that the petitioner's claim had merit."). "If this standard is difficult to meet—and it is—that is because it was meant to be. [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt*, 571 U.S. at 20 (internal citations and quotation marks omitted).

## B. Exhaustion of State Remedies and Procedural Default Doctrine

Section 2254 generally requires petitioners to exhaust all available state-law remedies before obtaining federal habeas review. In that regard, "[a] petitioner must alert state law courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Lamarca v.*

*Secretary, Dep't of Corrections*, 568 F.3d 929, 936 (11th Cir. 2009). "Exhaustion requires that 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). The exhaustion doctrine is grounded in principles of comity, *Rose v. Lundy*, 455 U.S. 509, 518 (1982), and is designed to give state courts a full and fair opportunity to resolve federal claims before those claims are presented to the federal courts. *Castille v. Peoples*, 489 U.S. 346, 351 (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971). When state remedies have not been exhausted as to federal claims, the habeas petition should be dismissed. *Id.* at 349.

"[T]o exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Lucas v. Secretary, Dep't of Corrections*, 682 F.3d 1342, 1352 (11th Cir. 2012); *see also Williams v. Allen*, 542 F.3d 1326, 1345 (11th Cir. 2008) (noting the exhaustion requirement is not satisfied unless "petitioner presented his claims to the state court such that a reasonable reader would understand each claim's . . . specific factual foundation") (citation omitted). It is not sufficient "that a somewhat similar state-law claim was made." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004). Where a claim has not been exhausted in the state courts and the time in which to present the claim has expired, federal courts deem the claim procedurally defaulted

and habeas review of the claim is precluded. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

## C. Overcoming a State Procedural Default

It is well settled that "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler*, 569 U.S. 413 (2013) (citation omitted). That said, appellate courts "repeatedly have emphasized that circumstances meriting the consideration of procedurally defaulted or barred constitutional claims are 'extremely rare' and apply only in the 'extraordinary case.'" *Rozzelle v. Secretary, Florida Dep't of Corrections*, 672 F.3d 1000, 1015 (11th Cir. 2012) (citations omitted).

"[A] habeas petitioner may overcome a procedural default if he can show adequate cause and actual prejudice, or, alternatively, if the failure to consider the merits of his claim would result in a fundamental miscarriage of justice." *Borden v. Allen*, 646 F.3d 785, 808 n.26 (11th Cir. 2011); *see also Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013). "As a general matter, 'cause' for procedural default exists if the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Bishop*, 726 F.3d at 1258 (citations and internal quotation marks omitted); *see also McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991) ("Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule

impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. . . . In addition, constitutionally ineffective assistance of counsel is cause.") (citations and internal marks omitted). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Spencer v. Sec'y*, 609 F.3d 1170, 1180 (11th Cir. 2010) (citation omitted); *see also Lucas v. Warden, Georgia Diagnostic and Classification Prison*, 771 F.3d 785, 801 (11th Cir. 2014) ("For prejudice, Lucas must demonstrate a reasonable probability that his conviction or sentence would have been different . . . .").

As an alternative to showing cause and prejudice, a prisoner may overcome a procedural default by showing a fundamental miscarriage of justice. "For a state prisoner to establish a fundamental miscarriage of justice, he must prove that he is innocent." *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (citations omitted). "To overcome procedural default through a showing of actual innocence, the petitioner must present reliable evidence . . . not presented at trial such that it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Rozzelle*, 672 F.3d at 1011 (citations and internal quotation marks omitted); *see also Kuenzel v. Commissioner, Alabama Dep't of Corrections*, 690 F.3d 1311, 1314–15 (11th Cir. 2012) ("To meet the proper standard, the petitioner must show that it is *more likely than not* that *no reasonable juror* would have convicted him in light of the new evidence.") (citation omitted).

11

**D. Ineffective Assistance of Counsel**

The Sixth Amendment of the Constitution guarantees every accused "the right . . . to have Assistance of counsel for his defense." U.S. Const. amend. VI. To establish an ineffective assistance claim under the Sixth Amendment, a petitioner must make both showings of the two-prong standard, discussed in *Strickland v. Washington*, that has been adopted by the Supreme Court for evaluating claims of ineffective assistance of counsel. *Strickland*, 466 U.S. 668 (1984). That is, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the *Strickland* test "are free to dispose of ineffectiveness claims on either of [*Strickland's*] two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

To satisfy the "performance" prong of the *Strickland* test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness," which is measured by "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In other words, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F. 3d 1051, 1053 (11th Cir. 1999) (citations omitted). Thus, the

petitioner has a difficult burden as to be considered unreasonable, "the performance must be such that 'no competent counsel would have taken the action that [the petitioner's] counsel did take.'" *Ball v. United States*, 271 F. App'x 880 (11th Cir. 2008) (unpublished) (citations omitted).

The petitioner must also satisfy the "prejudice" prong of the *Strickland* test. To that end, the petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" *Butcher v. United States*, 368 F.3d 1290, 1293, 95 F. App'x 1290 (11th Cir. 2004) (unpublished) (citations omitted). Further, it is not enough to satisfy the prejudice prong to merely show that the alleged errors affected the case in some imaginable way. *See id*. at 1293-1294. ("[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice.") (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted). Thus, "under the exacting rules and presumptions set forth in *Strickland*, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Windom v. Sec'y, Dep't of Corr*., 578 F.3d 1227, 1248 (citations omitted).

Pursuant to *Strickland,* "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (citation omitted). "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id*. "Surmounting *Strickland's* high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), largely because the "standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, (2011). The question is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. 86 at 105.

## III. Analysis

Bryant raises two grounds for relief in his § 2254 petition: (1) he was deprived of his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to object to witnesses invoking the Fifth Amendment in the presence of the jury (Doc. 7, PageID.100); and (2) his conviction is based on insufficient evidence and runs afoul of his federal due process rights under *Jackson v. Virginia*, 443 U.S. 307 (1979)

(Doc. 7, PageID.110).[3] Upon consideration, the undersigned finds that Bryant's ineffective assistance of counsel claim is both procedurally defaulted and meritless. Also, his federal due process claim fails on the merits. Accordingly, both claims are due to be dismissed.

## A. Bryant's Ineffective Assistance of Counsel Claim

Bryant argues that his trial counsel failed to provide effective representation as guaranteed by the Sixth Amendment when she failed to object to witnesses invoking the Fifth Amendment in the presence of the jury. (Doc. 7, PageID.100). Respondent contends that this claim is both procedurally defaulted and meritless. The undersigned will address each issue in turn.

### 1. Procedural Default

Respondent insists that Bryant's ineffective assistance of counsel claim is unexhausted because he failed to press the claim beyond the trial court's denial of his Rule 32 petition. (Doc. 12, PageID.140). Bryant claims that his ineffective assistance

---

[3] Respondent's Answer addresses three potential claims raised by Bryant: (1) his trial counsel was ineffective for failing to object to witnesses invoking the Fifth Amendment in the presence of the jury; (2) his conviction is not supported by sufficient evidence in violation of *Jackson v. Virginia*; and (3) the trial court erred in allowing witnesses to invoke the Fifth Amendment in the presence of the jury. However, the undersigned will only address the two claims Bryant raises in his § 2254 petition: (1) his trial counsel was ineffective for failing to object to witnesses invoking the Fifth Amendment in the presence of the jury; (2) his conviction is not supported by sufficient evidence in violation of *Jackson v. Virginia*. (Doc. 7, PageID.107–10); *see also* (Doc. 5, PageID.7–9) (indicating that Bryant only raises two grounds for relief).

of counsel claim was improperly denied by the state court on procedural grounds—namely, that the Court of Criminal Appeals mistakenly ruled that the claim could have been raised on direct appeal but was not, precluding the court from considering the argument in a Rule 32 petition. (Doc. 7, PageID.106).

However, Bryant's characterization of the state court's ruling is incorrect. The trial court and Court of Criminal Appeals did not hold that the subject ineffective assistance of counsel claim could have been raised on appeal—rather, they held Bryant's Rule 32 claim that the *trial court* erred in allowing witnesses to invoke the Fifth Amendment in front of the jury could have been raised on direct appeal. (*See* Doc.12-13, PageID.904; Doc. 12-17, PageID.988–99). As for Bryant's claim that *his trial counsel* provided ineffective assistance in failing to object to witnesses invoking the Fifth Amendment in the jury's presence—the same claim that Bryant now brings before this Court—the trial court denied this claim on the merits. (Doc. 12-13, PageID.905–10). Bryant reformulated this claim on appeal from the trial court's denial of his Rule 32 petition, instead arguing that his counsel was ineffective for failing to seek a curative instruction to remedy the prejudicial effect of the witnesses invoking the Fifth Amendment in the presence of the jury. (Doc. 12-14, PageID939–41). The Court of Criminal Appeals noted this discrepancy and declined to address the merits of the claim because the Rule 32 court did not issue an adverse ruling on the matter. (Doc. 12-17, PageID.989).

Bryant failed to exhaust the ineffective assistance of counsel claim before this Court because it has not been subjected to "one complete round of the State's

established appellate review process." *See O'Sullivan*, 526 U.S. at 845. Bryant failed to raise the present ineffective assistance of counsel claim on appeal of the trial court's denial of his Rule 32 petition (*see* Doc. 12-17, PageID.988) or in his subsequent application for a writ of certiorari before the Supreme Court of Alabama (*see* Doc. 12-20). In fact, the Court of Criminal Appeals expressly held that the *Strickland* claim Bryant brings now was abandoned on appeal (Doc. 12-17, PageID.998)—a ruling that Bryant did not challenge in his application for a rehearing or petition for a writ of certiorari. Instead, Bryant pressed a *Strickland* claim concerning his trial counsel's *failure to seek a curative jury instruction* addressing two witnesses' invocation of the Fifth Amendment during their testimony. (*See* Doc. 12-20, PageID.1019). The claim Bryant raises before this Court concerns his trial counsel's *failure to object* to the witnesses' invocation of the Fifth Amendment at the time of their testimony. (Doc. 7, PageID.109).[4] Thus, while both of these claims concern two witnesses invoking the Fifth Amendment in the presence of the jury, the omission Bryant identifies in each claim is different.

"[T]o preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the *specific acts or omissions* of his lawyers that resulted in prejudice." *Kelley*, 377 F.3d at 1344 (emphasis added). This rule only requires "that petitioners present their claims to the state courts such that the reasonable reader would

---

[4] Bryant did raise the present ineffective assistance of counsel claim regarding a failure to object in his initial Rule 32 petition. (Doc. 12-13, PageID.889).

understand each claim's particular legal basis and specific factual foundation," *id.* at 1344–45, which affords the state courts an "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim," *id.* at 1344 (quoting *Picard*, 404 U.S. at 277 (alteration in original)). However, petitioners cannot "allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances" as this "would be contrary to the state's 'full and fair opportunity to address the claim on the merits.' "*Kelley*, 377 F.3d at 1344 (quoting *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)).

The "specific acts and omissions" Bryant raised before the Court of Criminal Appeals and the Supreme Court of Alabama concerned his trial counsel's failure to request a curative instruction, which would trigger a different analysis under *Strickland* than a failure to object. *See Greenwood v. Sec'y, Dep't of Corr.*, 794 F. App'x 831, 834–35 (11th Cir. 2019) (unpublished) (considering a court's potential *Strickland* analysis in determining that a § 2254 petitioner's state claims were not sufficiently similar to his federal habeas claims to meet the exhaustion requirement). In evaluating whether a failure to seek a curative instruction violates *Strickland*'s reasonableness prong, a court would look to whether such an omission is necessary given other standard jury instructions or whether a special instruction may highlight an unfavorable issue for the jury.[5] *See Pate v. Jones*, No. 4:17CV562-WS/CAS, 2019

---

[5] The emphasis of a potentially unfavorable issue is also relevant in evaluating an attorney's decision to refrain from objecting to testimony. *See Werts v. Vaughn*, 228 F.3d 178, 205 (3d Cir. 2000). However, the presence of the jury during a trial counsel's

WL 506121, at *9 (N.D. Fla. Jan. 7, 2019), *report and recommendation adopted*, No. 4:17CV562-WS/CAS, 2019 WL 501484 (N.D. Fla. Feb. 8, 2019). However, in a *Strickland* analysis of a failure to object, the effect of an attorney's action "creating an unfavorable impression of counsel or the defendant in the eyes of the judge or jury" may also be considered, *see Gordon v. United States*, 518 F.3d 1291, 1300 (11th Cir. 2008)—a factor irrelevant in analyzing the reasonableness of requesting a jury instruction, which typically occurs outside the presence of a jury. Similar shifts in the presentation of habeas claims on appeal fail to satisfy § 2254(e)'s exhaustion requirement. *See Scott v. McDonough*, 218 F. App'x 954, 957 (11th Cir. 2007) (unpublished) (holding that a § 2254 petitioner's state claim alleging his counsel disregarded his express instruction to file an appeal was not sufficient to exhaust his federal habeas claim alleging his counsel failed to consult with him about pursuing an appeal).

Both Bryant and the state courts below treated these claims as different— Bryant pursued the failure to seek a curative instruction claim in the Court of Criminal Appeals and beyond while abandoning the failure to object claim after the trial court denied his initial Rule 32 petition. Bryant did not raise any objection to the Court of Criminal Appeal's abandonment ruling, thus depriving the Supreme Court of Alabama from considering the claim he now brings. (*See* Doc. 12-20). Even the similar *Strickland* claim Bryant pursued regarding his trial counsel's failure to

---

opportunity to object to testimony is a key difference between analyzing an attorney's failure to object and a failure to seek a curative instruction that Bryant failed to present Alabama courts for a complete round of review.

seek a curative instruction fails to meet § 2254's exhaustion requirement because the Court of Criminal Appeals found that it was not raised in his original Rule 32 petition. (Doc. 12-17, PageID.989). Waiver under Alabama's Rule 32 is a valid procedural ground upon which a habeas claim may be denied, *see Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002), and the undersigned's review of Bryant's Rule 32 petition (Doc. 12-13, PageID.820–91) confirms the Court of Criminal Appeals' factual finding—Bryant did not raise the failure to seek a curative instruction *Strickland* claim before the Rule 32 court. Bryant provides no authority—and the undersigned's own search reveals none—to support the proposition that a § 2254 petitioner can properly exhaust an issue by raising two similar claims at different points of the state proceedings while subjecting neither to a complete round of state review. Allowing § 2254 petitioners to cobble together similar unexhausted claims to form a single federal habeas claim "would be contrary to the state's 'full and fair opportunity to address the claim on the merits.' " *See Kelley*, 377 F.3d at 1344 (quoting *Footman*, 978 F.2d at 1211). Bryant failed to subject his present ineffective assistance of counsel claim to a complete round of state review, rendering the claim unexhausted.

Bryant's unexhausted *Strickland* claim is procedurally defaulted because he can no longer to exhaust it in Alabama courts. A proceeding under Alabama Rule of Criminal Procedure 32 is the sole avenue for a defendant to collaterally attack an Alabama conviction or sentence. *See* Ala. R. Crim. P. 32.4. Relevant here, Bryant's unexhausted ineffective assistance of counsel claim is not cognizable in a successive Rule 32 petition, removing any opportunity for him to properly exhaust the claim. *See*

Ala. R. Crim. P. 32.2(d). Bryant makes no attempt to excuse this procedural default. Accordingly, Bryant's ineffective assistance of counsel claim fails as procedurally defaulted.

### 2. *Merits of* Strickland *Claim*

Even if Bryant's claim satisfied § 2254's exhaustion requirement, it would still fail on its merits under AEDPA's deferential standard of review. "As a rule, [federal courts] review 'the highest state court decision reaching the merits of a habeas petitioner's claim.'" *Holland v. Florida*, 775 F.3d 1294, 1308 (11th Cir. 2014) (quoting *Hittson*, 759 F.3d at 1231), *cert. denied*, 136 S. Ct. 536 (2015). Here, that decision is the Mobile County Circuit Court's March 22, 2017, order denying Rule 32 relief,[6] which addressed Bryant's *Strickland* claim as follows:

> It is clear that the Court erred in requiring the subject witnesses to exercise their Fifth Amendment rights in front of the jury. However, it is less than clear that Bryant's counsel erred by not objecting to the Court's requirement that the subject witnesses exercise their Fifth amendment rights in front of the jury. In fact, during closing arguments Bryant's counsel used Addaryn Todd's appearance in front of the jury to buttress the defense's position that Mr. Todd was the real killer.

---

[6] The Court of Criminal Appeals decision addressing Bryant's Rule 32 petition did not reach the merits of his ineffective assistance of counsel claim. (*See* Doc.12-17, PageID.987). Further, the Court of Criminal Appeals' refusal to rehear Bryant's Rule 32 appeal or the Supreme Court of Alabama's denial of Bryant's petition for a writ of certiorari do not qualify as decisions on the merits as both are matters of discretion. *See Saylor v. State*, 278 Ala. 297, 297 (1965); *Elliott v. State*, 768 So. 2d 422, 423–24 (Ala. Crim. App. 1999) ("[O]ur courts have consistently treated a rehearing as a matter within the discretion of the court to which the application is addressed." (citation and quotation marks omitted)); Ala. R. App. P. 39(a) (noting that certiorari review by the Alabama Supreme Court "is not a matter of right, but of judicial discretion"); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Alabama court rules provide for discretionary review in the Supreme Court of Alabama of decisions by the Alabama Court of Criminal Appeals." (citing Ala. R. App. P. 39(c)).

. . . .

> Indeed, during the questioning of Shanika Thomas (who was questioned before Addaryn Todd) Bryant's counsel did interpose an objection to Shanika Thomas being questioned in front of the jury . . . .This suggests that defense counsel's later failure to object at all to the questioning of Addaryn Todd in front of the jury may have been a trial strategy. In any event, Bryant has failed to show how that any [sic] error was so serious as to constitute the "prejudice" required under *Strickland* to support a claim for constitutionally ineffective counsel.

(Doc. 12-13, PageID.906–07) (citations omitted).

The Mobile County Circuit Court's denial of Bryant's Rule 32 petition did not run "contrary to" or involve an unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d). In analyzing a *Strickland* claim brought pursuant to § 2254, federal courts must uphold a state court's decision when "there is any reasonable argument" that the trial counsel's conduct did not fall "below an objective standard of reasonableness." *See Harrington*, 562 U.S. at 104–05. Here, the trial court identified a coherent (if ultimately unsuccessful) strategy utilized by Bryant's counsel: use the potential negative inference from witnesses invoking the Fifth Amendment to paint someone other than Bryant as the killer. (Doc. 12-13, PageID.906–07). Courts have accepted similar tactical decisions by trial attorneys as reasonable under *Strickland's* deferential standard. *See, e.g., Butts v. GDCP Warden*, 850 F.3d 1201, 1234 (11th Cir. 2017) (holding that the state court did not unreasonably apply *Strickland* in finding that a blame shifting strategy, as part of a broader effort to instill doubt in the jury during the sentencing phase of a death penalty trial, was not objectively unreasonable); *John v. Crews*, No. 4:11CV359-WS, 2014 WL 4810318, at *5 (N.D. Fla. Sept. 26, 2014) (holding that state court did not

unreasonably apply *Strickland* in finding that a trial counsel's strategy "to point the finger at the co-defendant who was charged with two additional robberies and carried the weapon involved in all four robberies" was not objectively unreasonable). In concluding that this strategy did not fall below "an objective standard of reasonableness," the Circuit Court did not unreasonably apply clearly established federal law. *See Harrington*, 562 U.S. at 104–05. Accordingly, Bryant's ineffective assistance of counsel claim falls short of § 2254's demanding standards and should be **DISMISSED with prejudice**.

## B. Bryant's *Jackson v. Virginia* Claim

Bryant argues that his conviction is not supported by sufficient evidence, running afoul of his federal due process rights as set out in the Supreme Court's *Jackson v. Virginia* decision. (Doc. 7, PageID.110). Specifically, Bryant claims that the State presented only circumstantial evidence in securing his conviction, and that no "rational trier of fact could have found proof beyond a reasonable doubt." (Doc. 7, PageID.113) (quoting *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (per curiam)). In its Answer, Respondent focuses on why the substance of Bryant's *Jackson v. Virginia* claim is meritless and should not excuse the procedural default of his ineffective assistance of counsel claim. (Doc. 12, PageID.147).[7] Respondent contends that

---

[7] Respondent does not argue that Bryant's *Jackson v. Virginia* claim is procedurally defaulted, and the undersigned can only raise the issue *sua sponte* in limited circumstances. *See Moon v. Head*, 285 F.3d 1301, 1315 (11th Cir. 2002) ("Notwithstanding the State's inability to raise the claim, we have held that a 'district court may invoke the [procedural default] bar *sua sponte* [only] where . . . requiring

"Bryant's attempt to show that he is actually innocent of murder" is "heavily grounded upon the suppositions of the lone Alabama Supreme Court justice who dissented from the denial of certiorari review on direct appeal" and "falls far short of demonstrating . . . that he was convicted only as the result of a constitutional violation." (Doc. 12, PageID.147).

Under *Jackson v. Virginia*, a conviction fails due to insufficient evidence only when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis added). The Supreme Court explained the uphill climb habeas petitioners face in demonstrating viable *Jackson v. Virginia* claims:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury— not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U.S. 1, —— –, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) *(per curiam).* And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett,* 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and "does

---

the petitioner to return to state court to exhaust his claims serves an important federal interest.' " (quoting *Esslinger v. Davis,* 44 F.3d 1515, 1524 (11th Cir. 1995)).

not permit . . . fine-grained factual parsing" of the record. *Id.* at 655. Ultimately, "the only question under *Jackson* is whether [the jury's verdict] was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Bryant fails to satisfy *Jackson v. Virginia*'s high bar. Here, 'the highest state court decision reaching the merits" of Bryant's insufficiency of the evidence claim, *see Holland*, 775 F.3d at 1308 (quoting *Hittson*, 759 F.3d at 1231) was the Court of Criminal Appeals on direct appeal:

> The State presented sufficient legal evidence from which a rational finder of fact could have, by fair inference, found Bryant guilty beyond a reasonable doubt. The State's evidence, if accepted as true, established that a man shot and killed Tillman during a struggle that ensued after that man attempted to rob Tillman. At approximately the same time as the shooting, a witness observed a short man and a tall man, who was holding a revolver, run from the general area where the shooting had taken place, jump into a car, and speed away. Bryant is 6'1". Bullets collected at the crime scene and the bullet removed from Tillman's body were possibly fired from a revolver.   The man who shot Tillman left a blue knit cap at the crime scene. The cap was later determined to contain at least two sources of DNA, and Bryant was a potential contributor to that mixture.

> Further, when Officer Sanchez transported Bryant to police headquarters for Bryant to give a DNA sample, Bryant asked him why the police wanted his DNA. In response, Officer Sanchez tapped his own head, and Bryant stated, "Oh, my hat." When Bryant was taken to USA Medical Center for him to give a second DNA sample, he was resistant to having his blood drawn.

> Although Bryant's DNA was one of at least two sources of DNA discovered on the cap, we may legitimately infer--because of Bryant's conversation with Officer Sanchez--that Bryant knew or assumed that his DNA was on the cap, that police were in possession of his cap, and that police wanted to compare a known sample of his DNA to any DNA that might be found on the cap. We may also infer that, because Bryant was resistant to having his blood drawn to provide a second DNA sample, he either knew or assumed that his DNA might match DNA found on the cap and, therefore, connect him to Tillman's murder. We

may also infer that, because Bryant is tall and because Tillman was possibly shot with a revolver, Bryant was the tall man seen running and holding a revolver on the morning of the shooting.

Accepting as true all evidence introduced by the State, according the State all legitimate inferences therefrom, and considering all evidence in the light most favorable to the State, we find that a jury could have reasonably found the State's evidence excluded every reasonable hypothesis except that of Bryant's guilt. Bryant's claim, therefore, is without merit, and he is not entitled to relief on this issue.

Bryant's contention that the state's "legal evidence" is "limited simply" to three circumstantial items is belied by the record. While Bryant attacks the jury's consideration of circumstantial evidence, the Court of Criminal Appeals correctly noted that "circumstantial evidence . . . is not inferior to direct evidence, 'and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt.' " (Doc. 12-6, PageID.746) (quoting *Ward v. State*, 557 So. 2d 848 (Ala. Crim. App. 1990); *accord United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014). Here, the circumstantial evidence involving the shooter's blue knit cap containing Bryant's DNA is buttressed by Bryant's (1) admission that his hat prompted him being called in to provide a DNA sample, (2) his reluctance to provide a second DNA sample, and (3) his height (in conjunction with an eyewitness noting that the shooter was tall). Further, Bryant's adoption of the lone dissent from the Supreme Court of Alabama's denial of certiorari review on direct appeal, which was written without the benefit of a full record, smacks of the "fine-grained factual parsing" prohibited in the consideration of *Jackson v. Virginia* claims. *See Coleman*, 566 U.S. at 655. The Court of Criminal Appeals conducted a thorough analysis of the evidence against Bryant,

and the undersigned finds no unreasonable applications of federal law in its conclusion that a reasonable jury could have sustained the subject conviction. Accordingly, Bryant's *Jackson v. Virginia* claim fails and should be **DISMISSED with prejudice.**

### C. Certificate of Appealability.

In actions such as this one brought under § 2254, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).  Where habeas relief

is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. While "a COA does not require a showing that the appeal will succeed[,]" a prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (internal quotation marks omitted). Rather, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).

Upon consideration, the undersigned **RECOMMENDS** that Bryant be **DENIED** a Certificate of Appealability in conjunction with the dismissal of the present habeas petition, as he has not made a substantial showing of the denial of a constitutional right.[8]

---

[8] Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011). Should this Court deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of

**D. Appeal In Forma Pauperis.**

"An appeal may not be taken in forma pauperis if the trial court certifies in

writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).  A district court's

finding

> that an appeal would not be in good faith because no certificate of
> appealability had been issued . . . is not enough to explain why the
> appeal on the merits would not be in good faith, because the standard
> governing the issuance of a certificate of appealability is not the same
> as the standard for determining whether an appeal is in good faith. It is
> more demanding . . . [T]o determine that an appeal is in good faith, a
> court need only find that a reasonable person could suppose that the
> appeal has some merit.

*Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). In other words,

> [a] party demonstrates good faith by seeking appellate review of any
> issue that is not frivolous when examined under an objective standard.
> *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8
> L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal
> theories are indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393
> (11th Cir. 1993) (citations omitted). In other words, an IFP action is
> frivolous, and thus not brought in good faith, if it is "without arguable
> merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th
> Cir. 2001). More specifically, "arguable means capable of being
> convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir.
> 1991) (internal quotations and citations omitted). Nevertheless, where
> a "claim is arguable, but ultimately will be unsuccessful," it should be
> allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515
> (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859–60 (11th Cir. 2008) (per curiam)

(unpublished).

---

appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules
Governing Section 2254 Cases in the United States District Courts.

Considering the foregoing analysis, the undersigned **RECOMMENDS** the Court certify that any appeal by Bryant in this action would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[9]

## IV. Conclusion

As set out above, the undersigned **RECOMMENDS** that Bryant's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 5, PageID.3–17) be **DISMISSED with prejudice**, without an evidentiary hearing; that the Court find Bryant is not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal; and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.

**DONE** this the 11th day of August 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] Should the Court deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.